1
2
3
4
5
6
7
8                           UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DANIEL RAGAN,                              No.  2:17-cv-1924 JAM KJN P

12                  Petitioner,

13        v.                                    FINDINGS & RECOMMENDATIONS

14   C. DUCART,

15                  Respondent.

16

17   I.  Introduction

18          Petitioner is a state prisoner, proceeding without counsel, with an application for a writ of

19   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his August 11, 2009

20   conviction for possession of drugs and weapons, including eight felony and five misdemeanor

21   counts and two enhancements.  (ECF No. 31-2 at 144-62.)  Petitioner was sentenced to 181 years

22   to life in state prison.[1]  (ECF No. 31-3 at 25-27.)  Petitioner claims:  (1) ineffective assistance of

23   appellate counsel for failing to include appealable contentions initially included in the petition for

24   recall of sentence pursuant to Three Strikes Reform Act; (2) insufficient evidence to support the

25   state court's finding that petitioner was not eligible for resentencing on counts six and eight;

26

27   _____

     [1] The court reduced his sentence to 156 years to life by staying one of the felony counts.  (ECF
28   No. 9 at 87, 92; People v. Ragan, No. C063253, 2010 WL 4546696, at *10 (Cal. Ct. App. Nov.
     12, 2010)).

                                                    1

1    (3) ineffective assistance of appellate counsel for failing to raise petitioner's right to equal

2    protection; (4) ineffective assistance of appellate counsel for failing to argue that California Penal

3    Code § 1170.126 violates petitioner's state and federal due process rights; (5) ineffective

4    assistance of appellate counsel for failing to argue that imposing a third strike sentence constitutes

5    cruel and unusual punishment under the Eighth Amendment; (6) petitioner contends he was not

6    armed while in possession of methamphetamines; (7) cumulative error from appellate counsel's

7    failure to identify trial counsel's failure to perform including not calling critical witnesses to

8    testify and inadequately investigating the case; and (8) use of prior strikes violated his Sixth

9    Amendment right to a jury trial.  (ECF Nos. 9 & 27.)  After careful review of the record, this

10   court concludes that the petition should be denied.

11   II.  Procedural History

12        On August 11, 2009, a jury found petitioner guilty of eight felonies, five misdemeanors,

13   and two enhancements involving possession of drugs and weapons.  (ECF No. 31-2 at 144-62.)

14   On October 14, 2009, petitioner was sentenced to 181 years to life in state prison.  (ECF No. 31-3

15   at 25-27.)

16        Petitioner appealed the conviction to the California Court of Appeal, Third Appellate

17   District, challenging the admissibility of gun tattoos and a prior gun offense and the length of his

18   sentence.  The Court of Appeal affirmed the conviction on November 12, 2010.  (ECF No. 31-11)

19   Petitioner filed a petition for review in the California Supreme Court, which the court denied on

20   January 26, 2011.  (ECF Nos. 31-12 & 31-13.)

21        He also appealed the trial court's order denying his California Penal Code § 1170.126

22   petition for resentencing.  (ECF Nos. 31-16 to 31-18.)  The California Court of Appeal, Third

23   Appellate District, affirmed the trial court's denial.  (ECF No. 31-19.)  Petitioner then filed a

24   petition for review in the California Supreme Court.  (ECF No. 31-20.)  On September 21, 2016,

25   the California Supreme Court denied the petition.  (ECF No. 31-21.)  Petitioner also filed a

26   petition for resentencing and several state habeas corpus petitions, which the state courts denied.

27   (ECF Nos. 31-21 to 31-36; ECF Nos. 22-1 to 22-7.)

28        Petitioner filed his first federal habeas corpus petition in September 2017.  (ECF Nos. 1 &

2

9.)  On October 30, 2017, this court granted petitioner's motion for stay and abeyance under

Rhines v. Weber, 544 U.S. 269 (2005).  (ECF No. 8.)  The California Supreme Court denied his

petition for writ of habeas corpus on January 31, 2018.  (ECF No. 9 at 71.)  Petitioner filed his

first amended petition on December 12, 2019.  (ECF No. 9.)  This court subsequently lifted the

stay and directed respondent to file a response to the first amended petition.  (ECF No. 12 at 2.)

Respondent filed an answer on June 10, 2020.  (ECF Nos. 21 & 22.)  Petitioner filed a traverse on

October 22, 2020.  (ECF No. 27.)

III.  Facts[2]

        After independently reviewing the record, this court finds the appellate court's summary

accurate and adopts it herein.  In its unpublished memorandum and opinion affirming petitioner's

judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District

provided the following factual summary:

> We report the facts in the light most favorable to the jury verdict.
> (*People v. Miranda* (1993) 17 Cal.App.4th 917, 922.) Sadly, one of
> the central characters is dead. Cameo James (Jodi), who by all
> accounts ran a drug house and was charged as a codefendant in this
> case, committed suicide after pleading guilty to the possession and
> sale of various drugs. Her teenage son, C.J., and various neighbors
> testified for the prosecution and presented compelling evidence that
> defendant either spearheaded the narcotics business or aided and
> abetted Jodi's operation out of her house on Oakview Drive in
> Roseville. C.J. testified defendant lived with him and his mother for
> several months until a few days before a SWAT team descended on
> the house, confiscated drugs and weapons from throughout the
> house, and arrested his mother. He saw defendant with a .38–caliber
> handgun while defendant was living at the house.
>
> Jodi's mother testified that on one occasion while defendant was
> living with her daughter, she went to visit. Although she saw Jodi's
> car parked in the driveway, defendant would not allow her in the
> house. When she persisted, defendant told her to "get the hell off of
> that porch," followed by a threat that if she did not leave, he had "a
> .38 that would make [her] leave." She complied and did not report
> the incident to the police.
>
> None of the neighbors got to know defendant after he began living at
> the house in their otherwise "nice" and "quiet" neighborhood. Some
> observed a marked increase in the number of visitors that went to the

---

[2]  The facts are taken from the opinion of the California Court of Appeal for the Third Appellate
District in People v. Ragan, No. C063253 (Nov. 12, 2010), a copy of which was lodged by
respondent as ECF No. 31-11.

house at all hours of the night and day. Several testified they recognized defendant because of the number of tattoos he had all over his body. Although they testified that his appearance had changed substantially by the time of trial, when shown a picture taken at the time of his arrest, they identified defendant and reported that he had lived in the house for several months during 2007. There were varying accounts of when he appeared to have moved out.

As mentioned at the outset, defendant was charged with crimes arising on three different dates in August and September of 2007. The theme of his defense to most of the charges on each occasion was that the drugs and weapons were Jodi's, not his. Based on the following evidence, the jury found otherwise.

At 2:30 a.m. on August 1, a Roseville police officer was responding to a residential burglar alarm on Oakview Drive when he noticed an older Ford Crown Victoria parked close by with its parking lights on. There did not appear to be anyone in the vehicle. Suspicious, the officer made a U-turn, and when he pulled up behind the car, defendant popped up. Held at gunpoint, defendant explained that he lived in the house with his girlfriend and one of them had set off the burglar alarm. Because defendant was fidgety, spoke rapidly, and was sweating profusely, the officer believed he was under the influence of a drug.

A second officer and his K–9 partner, Drago, searched the car. They found 2.19 grams of methamphetamine in two baggies; the first officer found two hypodermic needles. Defendant was arrested, and when booked he stated he resided at 1714 Oakview Drive in Roseville. He was released on bail.

On August 22, 2007, police officers from both Citrus Heights and Roseville executed a search warrant at Jodi's house at 1714 Oakview Drive. They found both male and female clothing in the closet of the master bedroom, as if a couple was sharing the room together. Jodi was present during the search; defendant was not.

The police confiscated the following items from the master bedroom: usable quantities of methamphetamine, glass pipes, and empty Ziploc baggies; a Ziploc baggie containing methadone tablets in a dresser drawer; marijuana; a loaded .38–caliber revolver and a box of .38–caliber ammunition on top of a dresser inside a black bag with the words 'Tattoo gun' handwritten on the bag; unfired .357 Magnum revolver ammunition in an armoire drawer; a black mechanical gram scale with white crystalline residue on it in an armoire drawer; a black leather fanny pack on the bed containing a digital plastic gram scale; several hypodermic needles in an armoire drawer; two photographs of Jodi and defendant inside a wooden box on top of a dresser; and a videotape of defendant and Jodi. Based on this evidence, an expert in the sale of narcotics opined that methamphetamine was actively sold from Jodi's house on Oakview Drive.

Five days later defendant was seen going through a back window at Jodi's house. He was arrested. When booked, he provided "1714

4

Oakview, Roseville, California 95661" as his address and stated he was a "[t]attoo artist." Again he was released on bail, only to be rearrested a couple of weeks later.

Following Jodi's failure to appear on the August 22 charges, a warrant was issued for her arrest. On September 14, 2007, a police officer stopped a white Ford Mustang driven by defendant. Jodi was a passenger. As defendant, sporting brass knuckles on his belt, stepped out of the car as ordered, he dropped a baggie of marijuana. During the ensuing search, officers found syringes in his pockets. One of the officers on the scene noticed that defendant had tattoos of revolvers on his body.

The officers searched the car. They found methamphetamine, glass pipes, various pills (including hydrocodone), and syringes. One baggie of methamphetamine was found on the front passenger's seat, and another was found in plain view on the "transmission hump" in the rear seating area. The pipes and hydrocodone were found inside a leopard-print purse on the floorboard of the vehicle, behind the front passenger's seat. The syringes were found inside another purse with a skull and crossbones design on the outside.

Defendant and Jodi were arrested. During an interview, defendant stated he and Jodi had broken up during the week of August 22 but had gotten back together. Again defendant exhibited signs of recent drug use. He tested positive for methamphetamine, amphetamine, and a marijuana metabolite.

Defendant's mother and two women who loved him testified that defendant had moved out of Jodi's house sometime before the August 22 raid. His mother thought he had moved out around the beginning of August. One of the women, who herself had assaulted someone with a knife and beaten the person with her fist, stolen a car, and committed burglary and theft, testified she helped defendant move out around the Fourth of July. An ex-girlfriend, who lived with defendant's mother and hoped to reunite with defendant, testified that defendant moved out of Jodi's house and back into his mother's about two weeks before Jodi's house was searched.

A jury convicted defendant of an assortment of crimes occurring on August 1, August 22, and September 14, 2007.  A summary follows.

**August 1**

Count one—possession of methamphetamine. (Health & Saf.Code, § 11377, subd. (a).)

Count two—possession of a hypodermic needle. (Bus. & Prof.Code, § 4140.)

**August 22**

Count three—lesser included offense of possession of a controlled substance. (Health & Saf.Code, § 11377, subd. (a).)

Count four—possession of methamphetamine and/or methadone while armed with a firearm. (Health & Saf.Code, § 11370.1, subd. (a).)

Count six—maintaining a place for selling or using a controlled substance. (Health & Saf.Code, § 11366.)

Count seven—possession of a firearm by a felon. (Pen.Code, § 12021, subd. (a)(1).)

Count eight—unlawful possession of ammunition. (Pen.Code, § 12316, subd. (b)(1).)

**September 14**

Count ten—transportation of methamphetamine. (Health & Saf.Code, § 11379, subd. (a).)

Count twelve—possession of a deadly weapon. (Pen.Code, § 12020, subd. (a)(1).)

Count thirteen—driving under the influence of alcohol and drugs. (Veh.Code, § 23152, subd. (a).)

Count fourteen—being under the influence of methamphetamine. (Health & Saf.Code, § 11150, subd. (a).)

Count sixteen—unauthorized possession of a hypodermic needle. (Bus. & Prof.Code, § 4140.)

Count seventeen-driving with a suspended or revoked driver's license. (Veh.Code, § 14601.1, subd. (a).)

The jury also found two out-on-bail allegations were true. Defendant admitted two previous strikes and two prior prison terms.

(Ragan, 2010 WL 4546696, at *1-3).

IV.  Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

6

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

For purposes of applying § 2254(d)(1), "clearly established Federal law" consists of holdings of the Supreme Court at the time of the last reasoned state court decision. Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 132 S. Ct. 38, 44-45 (2011)); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 133 S. Ct. 1446, 1450 (2013) (citing Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012) (per curiam)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. Id. Further, where courts of appeals have diverged in their treatment of an issue, there is no "clearly established federal law" governing that issue. See Carey v. Musladin, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme

Court's] decisions, but unreasonably applies that principle to the facts of the prisoner's case." Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (quoting Williams, 529 U.S. at 413; see also Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004).  In this regard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Williams, 529 U.S. at 411; see also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Andrade, 538 U.S. at 75 ("It is not enough that a federal habeas court, in its 'independent review of the legal question,' is left with a '"firm conviction"' that the state court was '"erroneous"'").  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement."  Id. at 103.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims.  Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment.  Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision.  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  "When a federal claim has been presented to a state court and the state court has denied relief, it may be

presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99.  This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100.  Similarly, when a state court decision on petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, 568 U.S. 289, 298-301 (2013) (citing Richter, 562 U.S. at 98).  If a state court fails to adjudicate a component of the petitioner's federal claim, the component is reviewed de novo in federal court. See, e.g., Wiggins v. Smith, 539 U.S. 510, 534 (2003).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853.  Where no reasoned decision is available, the habeas petitioner has the burden of "showing there was no reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. Stancle v. Clay, 692 F.3d 948, 957 & n.3 (9th Cir. 2012).  While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court reviews the state court record to "determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Richter, 562 U.S. at 101.  It remains the petitioner's burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

1    habeas court must review the claim de novo.  Stanley, 633 F.3d at 860 (citing Reynoso v.

2    Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006)).

3    V.  Petitioner's Claims

4       A.  Insufficient Evidence to Support Denial of Resentencing Petition (Claims 2 & 6)

5       Petitioner is not challenging his underlying conviction and sentence.  Instead, he contests

6    the state court's denial of his petition for recall and resentencing under California Penal Code

7    § 1170.126.  This law, also referred to as the Three Strikes Reform Act, "created a postconviction

8    release proceeding whereby a prisoner who is serving an indeterminate life sentence imposed

9    pursuant to the three strikes law for a crime that is not a serious or violent felony and who is not

10    disqualified, may have his or her sentence recalled and be sentenced as a second strike offender

11    unless the court determines that resentencing would pose an unreasonable risk of danger to public

12    safety."  People v. Yearwood, 213 Cal. App. 4th 161, 168 (2013).

13       In Claim 2, petitioner argues that the state court's finding that he was ineligible for

14    resentencing under California Penal Code § 1170.126 on two counts was not supported by

15    substantial evidence.  (ECF No. 9 at 4, 19-24, 65-69.)  In Claim 6, he claims that he should not be

16    disqualified from resentencing because he was not personally armed in the commission of the

17    offense.  (Id. at 6; see also id. at 61-65.)  In response, respondent argues that petitioner's claims

18    attacking the state court's denial of his petition for resentencing are not cognizable on federal

19    habeas review.  (ECF No. 21 at 11.)

20       The last reasoned rejection of petitioner's claim is the decision of the California Court of

21    Appeal for the Third Appellate District.  The state court addressed this claim as follows:

22            Defendant contends there is insufficient evidence that he was armed
             during the commission of the maintaining a place for selling or using
23            a controlled substance and felon in possession of ammunition
             offenses to support the trial court's finding that he was ineligible for
24            resentencing on those convictions. We disagree.

25            Section 1170.126 allows defendants serving a life term for a third
             strike to petition for resentencing. (§ 1170.126, subd. (b).) Eligibility
26            for resentencing is initially limited to defendants serving life terms
             for felonies that are neither serious nor violent. (§ 1170.126, subd.
27            (e)(1).) Other factors can render a defendant ineligible for
             resentencing. One of the disqualifying factors, as cross-referenced
28            in section 1170.126, subdivision (e)(2), renders an offense ineligible

for recall of sentence if "[d]uring the commission of the current offense, the defendant used a firearm, was armed with a firearm or deadly weapon, or intended to cause great bodily injury to another person." (§ 667, subd. (e)(2)(C)(iii).)

In order to find defendant ineligible for resentencing, the trial court had to make a factual determination that he was armed with a deadly weapon during the commission of his offense. (*People v. Bradford* (2014) 227 Cal.App.4th 1322, 1331–1332.) This determination is retrospective in nature, similar to determining the factual nature of a prior conviction. (*Id.* at pp. 1337–1338.) We review a trial court's factual findings regarding the nature of a prior conviction for substantial evidence, viewing the record in the light most favorable to the judgment. (*People v. Jones* (1999) 75 Cal.App.4th 616, 633.)

A defendant is "armed" within the meaning of section 12022, subdivision (a)(1) "if the defendant has the specified weapon available for use, either offensively or defensively. [Citations.] ... '[A] firearm that is available for use as a weapon creates the very real danger it will be used.' [Citation.] Therefore, '[i]t is the availability—the ready access—of the weapon that constitutes arming.' " (*People v. Bland* (1995) 10 Cal.4th 991, 997.) "[*A*]*rming* under the sentence enhancement statutes does not require that a defendant utilize a firearm or even carry one on the body." (*Ibid.*)

In *Bland*, the Supreme Court agreed with the People's contention "that when, as here, a defendant engaged in felony drug possession, which is a crime of a continuing nature, has a weapon available at any time during the felony to aid in its commission, the defendant is 'armed with a firearm in the commission ... of a felony' within the meaning of section 12022, subdivision (a)." (*People v. Bland, supra*, 10 Cal.4th at p. 999.) The Supreme Court accordingly concluded that, "[f]rom evidence that the assault weapon was kept in defendant's bedroom near the drugs, the jury could reasonably infer that, at some point during the felonious drug possession, defendant was physically present with both the drugs and the weapon, giving him ready access to the assault rifle to aid his commission of the drug offense." (*Id.* at p. 1000.)

Defendant attempts to distinguish *Bland* by claiming it is limited to the facts of the case, a prosecution for the possession of drugs. Not so. The Supreme Court's holding was not premised on the fact the defendant was convicted of a drug possession offense, but because the drug possession offense was a continuing crime. Since defendant was continuously criminally liable while he possessed the illegal drugs, an armed finding was appropriate if the fact finder could infer he had ready access to the firearm at any point during the drug possession, *Bland's* reasoning therefore applies to any continuing offense.

The crime of maintaining a place for selling or using controlled substances is codified by Health and Safety Code section 11366, which states in pertinent part: "Every person who opens or maintains

1

2

> any place for the purpose of unlawfully selling, giving away, or using any controlled substance ... shall be punished by imprisonment in the county jail for a period of not more than one year or the state prison."

3

4

5

6

7

8

9

10

11

12

> "Cases construing the terms 'maintaining' or 'opening' in reference to narcotics cases rely on earlier opinions which construed those terms in statutes proscribing maintaining alcohol-related nuisances during Prohibition. These were places whose proprietors meant them to be used for consumption or sale of alcohol. Similarly, the courts have held that Health and Safety Code section 11366 and its predecessor, section 11557, are aimed at places intended for a continuing course of use or distribution." (*People v. Shoals* (1992) 8 Cal.App.4th 475, 490; see also *People v. Vera* (1999) 69 Cal.App.4th 1100, 1102–1103 ["The defendant seems to suggest that a violation of section 11366 occurs if a person engages in the personal, sequential use of any of the specified substances in his or her residence. We do not read this section to cover mere repeated solo use at home. To 'open' means 'to make available for entry' or 'to make accessible for a particular purpose' [citation], and to 'maintain' means 'to continue or persevere in' [citation]. When added to the word 'place,' the opening or maintaining of a place indicates the provision of such locality to others"].)

13

14

15

> Maintaining of a place for using or selling controlled substances is therefore subject to *Bland* as it is a continuing offense. Since felon in possession of ammunition is a possessory offense, it, like the unlawful possession of drugs or a firearm, is a continuing crime, and therefore also subject to *Bland*.

16

17

18

19

20

21

> Applying *Bland*, we find substantial evidence supports the trial court's ruling as to both offenses. Defendant's home was the location where he maintained a place for furnishing or using drugs, and a loaded firearm was found in his bedroom in the home. The trial court could reasonably infer that defendant would use his own bedroom and, since the maintaining crime was a continuous offense, defendant had the loaded firearm available for immediate offensive or defensive use while committing that crime. Since police found ammunition both near to and loaded in that same firearm, defendant was also armed while committing the continuous offense of felon in possession of ammunition. The trial court's denial of the petition as to these offenses is therefore supported by substantial evidence.

22

23

(People v. Ragan, No. C080548, 2016 WL 3944611, at *3-4 (Cal. Ct. App. July 19, 2016); see also ECF No. 31-19.)

24

25

26

27

28

Petitioner contends that the state court misinterpreted state law when it found that he was "armed with a deadly weapon" during the commission of the crime, and therefore ineligible for resentencing. Specifically, petitioner argues that he was not "armed" because he did not have personal possession of the firearm and constructive possession is insufficient. (ECF No. 9 at 62-69; see also id. at 22-23 (arguing that "[People v. Bland, 10 Cal. 4th 991 (1995)] carves an

1 | exception to the general rule that a defendant is not armed unless the gun is on him or near him"

2 | and this does not apply to crimes other than possession of drugs.))

3 |      Federal habeas courts are "limited to deciding whether a conviction violated the

4 | Constitution, laws, or treatises of the United States." McGuire, 502 U.S. at 68. A claim

5 | regarding the interpretation of California law is generally not cognizable on federal habeas

6 | review. 28 U.S.C. § 2254(a); McGuire, 502 U.S. at 68. "[F]ederal habeas corpus relief does not

7 | lie for errors of state law." Lewis v. Jeffers, 497 U.S. 764, 780 (1990). The state court's

8 | interpretation of state law is binding on a federal habeas court. Bradshaw v. Richey, 546 U.S. 74,

9 | 76 (2005) (per curiam).

10 |      Here, the state courts concluded that petitioner was disqualified from resentencing under

11 | § 1170.126 because he was armed with a firearm during the commission of the offense. (ECF

12 | No. 31-19 at 4-5; see also ECF No. 31-14 at 271-76.) More specifically, the state appellate court

13 | found that petitioner had "the loaded firearm available for immediate offensive or defensive use

14 | while" maintaining a place for using or selling controlled substances (count 6) and unlawful

15 | possession of ammunition (count 8). (ECF No. 31-19 at 5.) This is a matter of state sentencing

16 | law; it does not implicate a federal right. As a result, this court is bound by the state court's

17 | interpretation of how § 1170.126 applies to his case.

18 |      In response, petitioner contends that his claim is not about interpreting state law, but

19 | rather a violation of due process and equal protection. (ECF No. 27 at 3-4.) Petitioner, however,

20 | may not transform a state law claim into a federal one by merely asserting a violation of due

21 | process. See Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1996). A court may only grant

22 | habeas relief for a constitutional claim based on a state law error if that error so infected the trial

23 | with unfairness that the resulting conviction violates due process. See Donnelly v.

24 | DeChristoforo, 416 U.S. 637, 643 (1974); see also McGuire, 502 U.S. at 73 (noting that this

25 | category of infractions is very narrow). For federal habeas relief on a claimed state sentencing

26 | error, petitioner must show that there was an error and the error was "so arbitrary or capricious as

27 | to constitute an independent due process or Eighth Amendment violation." Jeffers, 497 U.S. at

28 | 780; see also Richmond v. Lewis, 506 U.S. 40, 50 (1992).

1    Petitioner has failed to prove either.  There was no state law error; the state court found

2    that petitioner was ineligible for resentencing under state law, and this court is bound by that

3    interpretation of state law.  Nor has petitioner shown that there was anything arbitrary or

4    capricious in the trial court's findings that he was not entitled to resentencing under § 1170.126.

5    Because petitioner was not entitled to resentencing under state law, the state court's refusal to

6    grant him this relief could not have deprived him of any federally protected right.  See, e.g.,

7    Johnson v. Spearman, No. CV 13-3021, 2013 WL 3053043, at *3 (C.D. Cal. June 10, 2013).  The

8    fact that petitioner purports to characterize his challenge as a due process or equal protection

9    violation under the federal constitution does not make it cognizable on federal habeas review.  No

10   federal court has found federal challenges to the Three Strikes Reform Act to be cognizable in

11   federal habeas.  See, e.g., Hawkins v. Gastelo, No. CV 19-7991-JVS, 2020 WL 7049532, at *3-4

12   (C.D. Cal. Oct. 6, 2020); Bamber v. Pollard, No. 19-cv-01599-WHO, 2020 WL 4818598, at *3

13   (N.D. Cal. Aug. 19, 2020); Perales v. Lizzaraga, No. 2:17-cv-0662, 2017 WL 2179453, at *3

14   (E.D. Cal. May 17, 2017).

15   To the extent petitioner challenges the state court's factual finding, this argument also

16   fails.  (ECF No. 27 at 4.)  Under § 2254(d)(2), a state court's decision based on a factual

17   determination is not to be overturned on factual grounds unless it is "objectively unreasonable in

18   light of the evidence presented in the state court proceeding."  Stanley, 633 F.3d at 859 (quoting

19   Davis, 384 F.3d at 638).  After reviewing the trial record, this court concludes that the state

20   appellate court's factual finding that petitioner was armed with a firearm during the commission

21   of maintaining a place for using or selling controlled substances (count 6) and unlawful

22   possession of ammunition (count 8) was not objectively unreasonable.  There was evidence that

23   petitioner lived in the home around the time the police raid occurred.  (ECF No. 31-5 at 160, 199-

24   200, 284, 290, 293; see also ECF No. 31-6 at 114.)  In addition to controlled substances, the

25   police found a loaded .38 caliber gun and additional ammunition in a bag with "tattoo gun"

26   written on the side in the master bedroom, which petitioner shared with Cameo James.  (ECF No.

27   31-5 at 258, 286; ECF No. 31-6 at 6, 8, 21; id. at 18 (testimony that "[i]n the room we found

28   photos of Daniel Ragan along with Cameo James. It appeared to me that the closet, a male and

14

female were sharing the room.") A witness testified that "the packaging and the narcotics wasn't in just one location…It was apparent to me that anyone in that room would have knowledge of what was going on in there." (ECF No. 31-5 at 290.) It was, therefore, not objectively unreasonable for the state appellate court to conclude that there was substantial evidence that petitioner was armed—had a loaded firearm available for immediate offensive or defensive use—while committing those crimes.

Petitioner claims that the state court's rejection of his claim is an unreasonable application of In re Winship, 397 U.S. 358 (1970), and Jackson v. Virginia, 443 U.S. 307 (1979). (ECF No. 27 at 4.) He is mistaken. In Winship, the Supreme Court held that the "constitutional safeguard of proof beyond a reasonable doubt" is "required during the adjudicatory stage of a [juvenile] delinquency proceeding." In re Winship, 397 U.S. at 368. Here, petitioner does not challenge the state court's reasonable doubt jury instruction. (ECF No. 31-7 at 85-86.) Nor does the state court's finding run afoul with Jackson because, as explained above, there is substantial evidence to support the state court's disqualification finding. Jackson, 443 U.S. at 319. This court concludes that the state court's decision was not contrary to, or an unreasonable application of, clearly established federal law, or that such a finding was based on an unreasonable application of the facts and recommends denying habeas relief on this claim.

B. Ineffective Assistance of Counsel (Claims 1, 3-5, & 7)

Next petitioner raises five ineffective assistance of counsel claims: (Claim 1) ineffective assistance of appellate counsel for failing to include appealable contentions that were included in the petition for recall of sentence pursuant to Three Strikes Reform Act; (Claim 3) ineffective assistance of appellate counsel for failing to raise petitioner's right to equal protection; (Claim 4) ineffective assistance of appellate counsel for failing to argue that § 1170.126 violates petitioner's due process rights; (Claim 5) ineffective assistance of appellate counsel for failing to argue that imposing a third strike sentence constitutes cruel and unusual punishment under the Eighth Amendment; and (Claim 7) ineffective assistance of appellate counsel for failing to argue cumulative errors made by trial counsel. (ECF Nos. 9 & 27.)

In response, respondent argues petitioner's ineffective assistance of appellate counsel

1   claims based on collateral post-conviction resentencing proceedings are not cognizable.  (ECF

2   No. 21 at 13.)  Alternatively, respondent contends that the state court reasonably denied each of

3   petitioner's claims.  (Id. at 13-20.)

4           Before turning to each individual claim, this court addresses respondent's argument that

5   petitioner's claims are not cognizable because § 2254(i) prohibits ineffective assistance of

6   counsel claims based on collateral post-conviction proceedings.  (ECF No. 21 at 13.)  Pursuant to

7   28 U.S.C. § 2244(i), "[t]he ineffectiveness or incompetence of counsel during Federal or State

8   collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising

9   under section 2254."  The statute, however, does not define "collateral post-conviction

10  proceedings."  Respondent contends that the Supreme Court's defined "collateral review" as

11  "judicial review that occurs in a proceeding outside of the direct review process" and asks this

12  court to expand this holding to include petitions for recall and resentencing under California

13  Penal Code § 1170.126.  See Wall v. Kholi, 562 U.S. 545, 560 (2011).  This court is not inclined

14  to expand Kholi in this manner for a few reasons.  First, Kholi concerned AEDPA's tolling

15  provision under § 2244(d)(2), not § 2254(i).  Second, the question before the Supreme Court in

16  Kholi was quite narrow.  Kholi, 562 U.S. at 551 ("The question in this case is whether a motion

17  for reduction of sentence under Rhode Island's Rule 35 is an 'application for State post-

18  conviction or other collateral review.")  Third, neither party has identified any persuasive

19  authority, nor is this court aware of any, that has expanded Kholi to this situation.  Lastly, because

20  each of petitioner's claims fail on the merits, this court need not reach this issue.

21              i.    Failure to Include More Arguments in Petition for Resentencing (Claim 1)

22          Petitioner claims his appellate counsel was ineffective because he failed to raise more than

23  one argument when appealing the trial court's denial of his petition for resentencing.  (ECF No.

24  9at 43-45.)  Specifically, his appellate counsel only raised the following argument when

25  appealing the denial of the petition for resentencing: "[t]he court's finding that Ragan was

26  ineligible for resentencing on counts 6 and 8 was not supported by substantial evidence, and the

27  order denying resentencing violated due process under the Fourteenth Amendment to the United

28  States Constitution."  (ECF No. 31-16 at 10; see also ECF Nos. 31-18 & 31-20.)  Respondent

1  does not directly respond to the merits of this claim.

2         Petitioner raised this argument in a state habeas petition before the California Court of

3  Appeal for the Third Appellate District, which the court denied on August 25, 2017.  (ECF Nos.

4  31-27 & 31-28.)

5         To state an ineffective assistance of counsel claim, a defendant must show that (1) his

6  counsel's performance was deficient, falling below an objective standard of reasonableness, and

7  (2) his counsel's deficient performance prejudiced the defense.  Strickland v. Washington, 466

8  U.S. 668, 687-88 (1984).  For the deficiency prong, "a court must indulge a strong presumption

9  that counsel's conduct falls within the wide range of reasonable professional assistance; that is,

10  the defendant must overcome the presumption that, under the circumstances, the challenged

11  action 'might be considered sound trial strategy.'"  Id. at 689.  For the prejudice prong, the

12  defendant "must show that there is a reasonable probability that, but for counsel's unprofessional

13  errors, the result of the proceeding would have been different.  A reasonable probability is a

14  probability sufficient to undermine confidence in the outcome."  Id. at 694.  This standard applies

15  to a claim of ineffective assistance of appellate counsel.  See, e.g., Smith v. Robbins, 528 U.S.

16  259, 285 (2000); Turner v. Calderon, 281 F.3d 851, 872 (9th Cir. 2002).  "[D]efense counsel does

17  not have a constitutional duty to raise all nonfrivolous issues."  Pollard v. White, 119 F.3d 1430,

18  1435 (9th Cir. 1997) (citing Miller v. Keeney, 882 F.2d 1428, 1434 & n.10 (9th Cir. 1989)); see

19  also Jones v. Barnes, 463 U.S. 745, 751 (1983).

20         "The standards created by Strickland and § 2254(d) are both 'highly deferential,' and

21  when the two apply in tandem, review is 'doubly' so."  Richter, 562 U.S. at 105 (internal citations

22  omitted); see also Landrigan, 550 U.S. at 473.  When § 2254(d) applies, the "question is whether

23  there is any reasonable argument that counsel satisfied Strickland's deferential standard."

24  Richter, 562 U.S. at 105.

25         From this court's review of the record, it appears that claim one merely summarizes the

26  specific performance errors petitioner alleges in claims three, four, and five.  (Pet. for

27  Resentencing, ECF No. 31-14 at 59-97; ECF No. 31-27 at 12 (arguing that appellate counsel was

28  ineffective for "failing to include these appealable contentions"); see also ECF No. 31-27 at 9

17

1    (stating that "appellate counsel failed to address four[3] particular arguments" which have "now

2    became Ragan's central submission up the California state judicial ladder."))  This opinion

3    addresses each of those claims individually below and concludes that they cannot succeed.

4                    ii.    Failure to Raise Equal Protection Violation (Claim 3)

5            Petitioner claims that appellate counsel was ineffective because he failed to argue that

6    California Penal Code § 1170.126 violated his right to equal protection by treating third strike

7    offenders differently than similarly situated second strike criminal defendants awaiting

8    sentencing. (ECF No. 9 at 45-52.)  The background to this claim is as follows.

9                    On November 6, 2012, voters approved Proposition 36, the Three
                Strikes Reform Act of 2012 (the Act). Under the three strikes law
10               (Pen. Code, §§ 667, subds. (b)–(i), 1170.12) as it existed prior to
                Proposition 36, a defendant convicted of two prior serious or violent
11               felonies would be subject to a sentence of 25 years to life upon
                conviction of a third felony. Under the Act, however, a defendant
12               convicted of two prior serious or violent felonies is subject to the 25–
                year–to–life sentence only if the third felony is itself a serious or
13               violent felony. If the third felony is not a serious or violent felony,
                the defendant will receive a sentence as though the defendant had
14               only one prior serious or violent felony conviction, and is therefore
                a second strike, rather than a third strike, offender. The Act also
15               provides a means whereby prisoners currently serving sentences of
                25 years to life for a third felony conviction which was not a serious
16               or violent felony may seek court review of their indeterminate
                sentences and, under certain circumstances, obtain resentencing as if
17               they had only one prior serious or violent felony conviction.
                "According to the specific language of the Act, however, a current
18               inmate is not entitled to resentencing if it would pose an unreasonable
                risk of danger to public safety." (*Id*. at pp. 1285–1286, fn. omitted.)
19               "[T]here are two parts to the Act: the first part is prospective only,
                reducing the sentence to be imposed in future three strike cases where
20               the third strike is not a serious or violent felony (Pen. Code, §§
                667, 1170.12); the second part is retrospective, providing similar, but
21               not identical, relief for prisoners already serving third strike
                sentences in cases where the third strike was not a serious or violent
22               felony (Pen. Code, § 1170.126)."

23   Perales, 2017 WL 2179453, at *1 (citing People v. Super. Ct., 215 Cal. App. 4th 1279, 1292

24   (2013)).  Respondent asserts that because the argument is meritless, defense counsel was not

25   ineffective for failing to raise it.  (ECF No. 21 at 15.)  Petitioner raised this argument in a state

26   habeas petition before the California Court of Appeal for the Third Appellate District, which the

27

28   _____
     [3] The fourth argument is like the claims two and six.

                                                18

1    court denied on August 25, 2017.  (ECF Nos. 31-27 & 31-28.)

2           As discussed above, the fact that petitioner purports to characterize his challenge as an

3    equal protection violation under the federal constitution does not make it cognizable on federal

4    habeas review.  No federal court has found federal challenges to the Three Strikes Reform Act to

5    be cognizable in federal habeas.  See, e.g., Hawkins, 2020 WL 7049532, at *3-4; Bamber, 2020

6    WL 4818598, at *3; Perales, 2017 WL 2179453, at *3.  Layering an equal protection claim with

7    an ineffective assistance of counsel claim does not revitalize this claim.

8           Even considering the claim on the merits, petitioner's claim fares no better.  The Equal

9    Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any

10   person within its jurisdiction the equal protection of the laws."  U.S. CONST. amend XIV, § 1.

11   This is a "direction that all persons similarly situated should be treated alike."  City of Cleburne,

12   Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).  State legislation is presumed valid "if

13   the classification drawn by the statute is rationally related to a legitimate state interest."  Id. at

14   440; see also Heller v. Doe, 509 U.S. 312, 319 (1993).  A heightened standard of scrutiny,

15   however, applies where a statute classifies by a suspect class or impinges on a fundamental

16   right.  Id. at 440-41.  "[I]f a law neither burdens a fundamental right nor targets a suspect class,

17   [courts] will uphold the legislative classification so long as it bears a rational relation to some

18   legitimate end."  Romer v. Evans, 517 U.S. 620, 631 (1996).

19          Petitioner is neither a member of a suspect class nor is resentencing a fundamental right.

20   "Neither prisoners nor 'persons convicted of crimes' constitute a suspect class for equal

21   protection purposes."  United States v. Whitlock, 639 F.3d 935, 941 (9th Cir. 2011).  Moreover,

22   resentencing is not a "fundamental right" protected by the U.S. Constitution.  See McDonald v.

23   City of Chicago, 561 U.S. 742, 764-65 (2010).  Therefore, the rational basis test applies in

24   determining the legitimacy of California's statutory resentencing scheme.  The prisoner, not the

25   state, "bear[s] the burden of establishing a prima facie case of uneven application."  McQueary v.

26   Blodgett, 924 F.2d 829, 835 (9th Cir. 1991).

27          Here, petitioner has not met his burden.  Even if petitioner were similarly situated with

28   second strike criminal defendants awaiting sentencing, the state has a legitimate interest in

1    disqualifying from resentencing armed third strike offenders because those persons are reasonably

2    viewed as being particularly dangerous.  See People v. Blakely, 225 Cal. App. 4th 1042, 1057

3    (2014) ("A felon who has been convicted of two or more serious and/or violent felonies in the

4    past, and most recently had a firearm readily available for use, simply does not pose little or no

5    risk to the public."); Yearwood, 213 Cal. App. 4th at 176 ("It would be inconsistent with the

6    public safety purpose of the Act to create a loophole whereby prisoners who were sentenced years

7    before the Act's effective date are now entitled to automatic sentencing reduction even if they are

8    currently dangerous and pose an unreasonable public safety risk.")  Moreover, the Supreme Court

9    has repeatedly upheld recidivism statutes in the face of equal protection challenges.  Parke v.

10   Raley, 506 U.S. 20, 27 (1992).  Because petitioner has failed to show that § 1170.126 violates his

11   right to equal protection, his appellate counsel could not have been deficient for omitting this

12   argument nor could his counsel's performance have prejudiced his defense.

13           In the traverse, petitioner cites three authorities he claims support his argument.  (ECF No.

14   27 at 6 ("The crux of Respondent's dispute with the instant claim, is based upon the false

15   premise, that federal law does not recognize sentencing provisions under state law, that gives rise

16   to defendants as a 'suspect class' for equal protection purposes.")  But these cases are inapposite.

17   In Schriro v. Summerlin, 542 U.S. 348, 358 (2004), the Supreme Court held that the rule

18   announced in Ring v. Arizona, 536 U.S. 584 (2002), that a jury must determine the existence of

19   an aggravating factor to authorize the death penalty under Arizona law, does not apply

20   retroactively to cases already final on direct review.  In Beard v. Banks, 542 U.S. 406 (2004), the

21   Supreme Court concluded that the new rule of criminal procedure announced in Mills v.

22   Maryland, 486 U.S. 367 (1988) does not fall within either Teague exception and does not apply

23   retroactively.  Lastly, the Supreme Court determined that the substantive rule of constitutional

24   law announced in Miller v. Alabama, 567 U.S. 460 (2012) applies retroactively.  Montgomery v.

25   Louisiana, 577 U.S. 190 (2016).  None of these cases involved an equal protection challenge to a

26   state resentencing law.

27           The state court's decision rejecting petitioner's ineffective assistance of counsel claim was

28   not contrary to, or an unreasonable application of, clearly established Supreme Court authority.

1    Accordingly, this court recommends denying habeas relief on this claim.

2              iii.      Failure to Raise Violation of Right to Due Process (Claim 4)

3         Petitioner argues that his appellate counsel was ineffective for failing "to argue the

4    question of whether or not both his federal and state due process clauses and his Sixth

5    Amendment right to a jury trial are violated by Section 1170.126." (ECF No. 52.)  More

6    specifically, petitioner claims he was entitled to be resentenced unless the prosecution proved to

7    the jury that he posed an unreasonable risk of dangerousness beyond a reasonable doubt.  (Id. at

8    53.)  He also contends that allowing "the trial court to find facts never found by a jury to prevent

9    any consideration of resentencing violates [Apprendi v. New Jersey, 530 U.S. 466 (2000)]." (Id.

10   at 55.)  Respondent asserts that a fair-minded jurist could agree with the state court's denial of

11   petitioner's claim because there is no legal authority to support the claim.  (ECF No. 21 at 15-16.)

12        Petitioner raised these arguments in a state habeas petition before the California Court of

13   Appeal for the Third Appellate District, and the court denied the claims on August 25, 2017.

14   (ECF Nos. 31-27 & 31-28.)

15        Together, the Sixth and Fourteenth Amendments "indisputably entitle a criminal

16   defendant to 'a jury determination that [he] is guilty of every element of the crime with which he

17   is charged, beyond a reasonable doubt.'"  Apprendi, 530 U.S. at 476-77 (citing United States v.

18   Gaudin, 515 U.S. 506, 510 (1995)).  "[I]t is clear that the sentencing process, as well as the trial

19   itself, must satisfy the requirements of the Due Process Clause."  Gardner v. Florida, 430 U.S.

20   349, 358 (1977).  A defendant may not be sentenced based on confidential information not

21   disclosed to defendant or his counsel.  Id.  Although due process requires that a sentence not be

22   predicated on materially untrue information, United States v. Tucker, 404 U.S. 443, 447 (1972);

23   Townsend v. Burke, 334 U.S. 736, 740-41 (1948), it does not impose the same evidentiary

24   requirements at sentencing as demanded for trial, Williams v. New York, 337 U.S. 241, 250-51

25   (1949).

26        Here, petitioner's argument that the prosecutor was required to meet a higher burden of

27   proof fails.  California law does not impose a duty on the prosecutor to plead and prove the fact

28   that disqualifies the prisoners from resentencing beyond a reasonable doubt.  Blakely, 225 Cal.

21

1   App. 4th at 1048, 1058.  In Blakely, the state court clarified that "when an *initial* sentencing that

2   occurs after the Act's effective date is at issue, there is a clear statutory pleading and proof

3   requirement with respect to factors that disqualify a defendant with two or more prior strike

4   convictions from sentencing as a second strike offender."  Id. at 1058.  "Fairly read,

5   however, section 1170.126 does not impose the same requirements in connection with the

6   procedure for determining whether an inmate already sentenced as a third strike offender is

7   eligible for *resentencing* as a second strike offender."  Id.  Despite arguing otherwise, petitioner

8   acknowledges this distinction in his habeas petition.  (ECF No. 9 at 55 ("There is no similar

9   pleading and proof requirement to disqualify an inmate from resentencing provisions in Section

10   1170.126."))  Instead, "a trial court determining whether an inmate is eligible for resentencing

11   under section 1170.126 may examine relevant, reliable, admissible portions of the record of

12   conviction to determine the existence of a disqualifying factor."  Blakely, 225 Cal. App. 4th at

13   1049.  Petitioner does not raise any challenges to the trial court's evidentiary basis for its

14   disqualification finding.  Nor has he identified any Supreme Court case that directly supports his

15   argument.  Even if a pleading and proof requirement existed for the original sentencing upon a

16   conviction, a resentencing proceeding is different because it is an act of lenity for an otherwise

17   invalid sentence.  Dillon v. United States, 560 U.S. 817, 828 (2010) (holding that sentence-

18   modification proceedings under federal statute "do not implicate the Sixth Amendment right to

19   have essential facts found by a jury beyond a reasonable doubt" because the federal statute

20   "represents a congressional act of lenity intended to give prisoners the benefit of later enacted

21   adjustments" in sentencing guidelines).

22          The absence of any Supreme Court decision requiring a prosecutor to plead and prove

23   facts disqualifying a petitioner from resentencing is fatal to his claim.  Defense counsel is not

24   obligated to raise all nonfrivolous issues, Pollard, 119 F.3d at 1435, and he certainly has no duty

25   to raise a frivolous one.  This court concludes that the state court could have reasonably

26   determined that defense counsel's failure to raise a due process argument was neither deficient

27   nor prejudicial and its finding was not contrary to, or an unreasonable application of, clearly

28   established Supreme Court authority.

1    Petitioner also argues that the state courts' finding that he was armed during the

2    commission of the offense and therefore disqualified from resentencing is contrary to Apprendi.

3    (ECF No. 9 at 55.)  But that case is distinguishable.  In Apprendi, the Supreme Court held that

4    "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond

5    the prescribed statutory minimum must be submitted to a jury, and proved beyond a reasonable

6    doubt."  Apprendi, 530 U.S. at 490; see also Cunningham v. California, 549 U.S. 270, 293

7    (2007).  Here, the state courts' denial of petitioner's resentencing petition did not increase his

8    sentence; rather, the courts decided he was ineligible for a sentence reduction.  See Blakely, 225

9    Cal. App. 4th at 1060-61 (holding that Apprendi does not apply to determining a defendant's

10   eligibility under the Act because it "does not increase or aggravate that individual's sentence;

11   rather, it leaves him or her subject to the sentence originally imposed.")  The state court's

12   decision was not contrary to, or an unreasonable application of, clearly established Supreme

13   Court authority, and this court recommends denying habeas relief on this claim.

14              iv.    Failure to Raise Cruel and Unusual Punishment (Claim 5)

15   Petitioner claims his appellate counsel was ineffective for failing to argue that the

16   reimposition of his third strike sentence constitutes cruel and unusual punishment because a

17   defendant sentenced for his same crimes now would receive a much lower sentence.  (ECF No. 9

18   at 56-60; see id. at 60 ("If, as a matter of legislative policy, a defendant today can receive no more

19   than a two-strike sentence for conduct identical to that of an incarcerated inmate, then the

20   imposition of an indeterminate life term for the inmate convicted prior to the change in policy is

21   totally disproportionate, shocks the conscience, and constitutes cruel and unusual punishment.")

22   Respondent raises two counter arguments.  First, a fair-minded jurist could agree with the

23   state court's denial of petitioner's claim.  (ECF No. 21 at 16.)  Second, petitioner's counsel raised

24   this argument on direct appeal and in a petition for resentencing.  (Id. at 20-21.)

25   Petitioner raised a similar argument on direct appeal before the California Court of Appeal

26   for the Third Appellate District.  (ECF No. 31-8 at 47-51.)  In his appellate brief, he argued that

27   his initial sentence constituted cruel and unusual punishment under the Eighth Amendment.  (Id.)

28   In the last reasoned decision, the trial court rejected his claim:

Defendant contends that imposition of a 181–year term of imprisonment on a drug addict constitutes cruel and unusual punishment under the state and federal Constitutions. Application of binding authority compels us to reject defendant's legal argument; examination of the record, as demonstrated above, compels us to reject his factual predicates.

Defendant and the Attorney General cite the same governing legal principles. "A sentence may violate the state constitutional ban on cruel and unusual punishment (Cal. Const., art. I, § 17) if ' "... it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.'" [Citation.]" (*People v. Thongvilay* (1998) 62 Cal.App.4th 71, 87–88.) In *In re Lynch* (1972) 8 Cal.3d 410, 425–427, the California Supreme Court prescribed three different techniques for evaluating the merits of a cruel and unusual challenge to a sentence. Here both parties focus on the first technique utilized in *Lynch*-an examination of the "nature of the offense and/or the offender, with particular regard to the degree of danger both present to society." (*Id.* at p. 425.)

Applying this technique, defendant urges us to consider the facts of the crime and the totality of the circumstances, including his motive, the extent of his involvement, and the consequences of his acts, in determining whether the punishment is "grossly disproportionate to the defendant's individual culpability as shown by such factors as his age, prior criminality, personal characteristics, and state of mind." (*People v. Dillon* (1983) 34 Cal.3d 441, 479.) Factually, defendant sanitizes his background, painting his violent strikes as youthful indiscretions, his current convictions as addiction-related, and his prospects for the future as promising. The record reveals a much darker profile.

It is true that defendant committed his most violent offenses when he was much younger. But the circumstances of those crimes are disturbing. He admitted beating an elderly man and shooting an African–American, significant because he continues to belong to white supremacist gangs. And his crimes do not consist of mere drug possession. Rather, he remains armed, and as his threat to Jodi's mother demonstrates, he appears ready to use his guns to intimidate, if not terrorize and shoot, other members of society. Moreover, he has consistently violated his parole and served multiple prison terms.

Thus, he is not the benign drug abuser he would have us believe. In general, the California Supreme Court has held the three strikes law is not so disproportionate that it violates the prohibition against cruel and unusual punishment. (*People v. Cluff* (2001) 87 Cal.App.4th 991, 997.) Defendant bears a considerable burden to prove the application of the three strikes sentencing scheme is unconstitutional. (*People v. Ruiz* (1996) 44 Cal.App.4th 1653, 1662.) Given the circumstances surrounding his first two strikes, his ongoing involvement with guns and gangs, and his inability to conform his conduct to the social norms prescribed by California's criminal law, we conclude defendant failed to sustain his burden of proof. The sentence neither shocks the conscience nor offends fundamental notions of human dignity.

24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

> Nor does he sustain his burden of demonstrating the sentence is cruel and unusual under the federal Constitution. If a recidivist in Texas can be sentenced to a life term for fraudulently charging $80 on his credit card, writing a forged check for $28.36, and stealing $120.75 under false pretenses (*Rummel v. Estelle* (1980) 445 U.S. 263 [63 L.Ed.2d 382] ), a recidivist in California can be sentenced to 25 years to life for stealing three golf clubs following convictions for various other theft crimes as well as possession of drug paraphernalia and the unlawful possession of a firearm (*Ewing v. California* (2003) 538 U.S. 11, 17–20 [155 L.Ed .2d 108] ), and another California recidivist who had been convicted of three burglaries, two petty thefts, two drug offenses, and escape can be sentenced to 50 years to life for stealing videocassettes worth less than $200 (*Lockyer v. Andrade* (2003) 538 U.S. 63 [155 L.Ed.2d 144] ), then we find no federal constitutional impediment to defendant's 181–year sentence for 13 counts of drug and weapons possession, all but two of which were committed while defendant was out on bail. Not only does defendant have a 20–year history of involvement with the criminal justice system, but that history began with terribly violent crimes and he continued to remain armed.
>
> We would not equate defendant's circumstances to those reported by the Ninth Circuit Court of Appeals, even if we were willing to follow nonbinding authority. The triggering crimes in *Ramirez v. Castro* (9th Cir.2004) 365 F.3d 755 and *Gonzalez v. Duncan* (9th Cir.2008) 551 F.3d 875 were petty theft and failure to timely update an annual sex offender registration, respectively. While Gonzalez had a long criminal history, the court found his current offense was " 'an entirely passive, harmless, and technical violation of the registration law.' [Citation.]" (*Gonzalez*, at pp. 885–886.) Ramirez's criminal history included two robbery convictions that the court found were nothing more than petty theft. His total sentence had been one year in county jail and three years on probation. (*Ramirez,* at pp. 757–758, 768.) There was nothing passive or technical about defendant's commission of 13 counts of drug and gun offenses, and he certainly has a record far more distinguished than his counterpart in *Ramirez*. The Ninth Circuit cases do not assist him.

20

(ECF No. 31-11 at 27-30.)  His counsel raised that same argument again in the petition for

21

resentencing.  (ECF No. 31-14 at 65-66.)  The court denied the resentencing petition on all but

22

one count.  (Id. at 279.)  Now, petitioner argues that the denial of his petition for resentencing (or

23

what he calls the reimposition of his sentence) constitutes cruel and unusual punishment because

24

he would have received a much lower sentence if he was eligible for resentencing.  This is the

25

first time petitioner has raised this argument and it is unexhausted.

26

Even though this claim is unexhausted, a petition may be denied on the merits without

27

exhaustion of state court remedies.  28 U.S.C. § 2254(b)(2).  A federal habeas court can deny an

28

1   unexhausted claim on the merits "only when it is perfectly clear that the applicant does not raise

2   even a colorable federal claim." Cassett v. Stewart, 406 F.3d 614, 623-24 (9th Cir. 2005)

3   (citing Granberry v. Greer, 481 U.S. 129, 135 (1987)).  Because petitioner's claim lacks merit,

4   this court recommends denying habeas relief.

5        The Eighth Amendment mandates that "[e]xcessive bail shall not be required, nor

6   excessive fines imposed, nor cruel and unusual punishment inflicted."  U.S. CONST. amend. VIII.

7   "The final clause prohibits not only barbaric punishments, but also sentences that are

8   disproportionate to the crime committed."  Solem v. Helm, 463 U.S. 277, 284 (1983).  "[A]

9   court's proportionality analysis under the Eighth Amendment should be guided by objective

10  criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences

11  imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for

12  commission of the same crime in other jurisdictions."  Id. at 292.  But this is not a "rigid three-

13  part test."  Harmelin v. Michigan, 501 U.S. 957, 1004-05 (1991) (Kennedy, J., concurring in part

14  and concurring in judgment) ("A better reading of our cases leads to the conclusion that

15  intrajurisdictional and interjurisdictional analyses are appropriate only in the rare case in which a

16  threshold comparison of the crime committed and the sentence imposed leads to an inference of

17  gross disproportionality.")  The Supreme Court has stated that it is clearly established law under

18  § 2254(d)(1) that a gross disproportionality principle is applicable to sentences for terms of years.

19  Andrade, 538 U.S. at 72.  In the context of noncapital punishment, "successful challenges to the

20  proportionality of particular sentences have been exceedingly rare."  Rummel v. Estelle, 445 U.S.

21  263, 272 (1980); see also Andrade, 538 U.S. at 73.

22       In the context of California's three strike laws, the Supreme Court noted that California

23  "made a judgment that protecting the public safety requires incapacitating criminals who have

24  already been convicted of at least one serious or violent crime.  Nothing in the Eighth

25  Amendment prohibits California from making that choice."  Ewing v. California, 538 U.S. 11, 25

26  (2003).  When applying the gross proportionality principle in these cases, courts must assess the

27  gravity of the offense by evaluating both the current felony and the defendant's criminal record.

28  Id. at 29; see also Rummel, 445 U.S. at 284 ("Having twice imprisoned him for felonies, Texas

26

1    was entitled to place upon [defendant] the onus of one who is simply unable to bring his conduct

2    within the social norms prescribed by the criminal law of the State.")  The Supreme Court has

3    issued several opinions upholding lengthy sentences under the disproportionality principle.  <u>See</u>

4    <u>Ewing</u>, 538 U.S. at 30-31 (plurality opinion) (holding that a sentence of 25 years to life imposed

5    for felony grand theft of three golf clubs under the three strikes law does not violate the Eighth

6    Amendment); <u>Andrade</u>, 538 U.S. at 77 (holding that it was not an unreasonable application of

7    clearly established law for the state court to affirm two consecutive terms of 25 years to life for

8    stealing about $150 in videotapes); <u>Rummel</u>, 445 U.S. at 266 (holding that a sentencing a three-

9    time offender to life in prison with a possibility of parole for obtaining $120.75 by false pretenses

10   did not violate the Eighth Amendment).

11          The Ninth Circuit has applied the gross disproportionality test in several habeas cases

12   challenging convictions under California's recidivist statute and have upheld the convictions

13   except in a few extraordinary cases.  <u>See, e.g.</u>, <u>Crosby v. Schwartz</u>, 678 F.3d 784, 791, 795 (9th

14   Cir. 2012) (upholding sentence for 26 years to life for failing to annually update his registration

15   five days after his birthday and failing to register within five days of a change of address);

16   <u>Gonzalez v. Duncan</u>, 551 F.3d 875, 891 (9th Cir. 2008) ("The disparity between Gonzalez's

17   technical violation of a regulatory crime of omission and the 28 years to life sentence imposed is

18   so extreme that the state court could uphold the constitutionality of the sentence only by reading

19   the 'grossly disproportionate' standard out of federal law."); <u>Ramirez v. Castro</u>, 365 F.3d 755,

20   756, 767-75 (9th Cir. 2004) (holding that a life sentence for shoplifting of a $199 VCR with

21   qualifying priors is an "extremely rare care that gives rise to an inference of gross

22   disproportionality"); <u>Nunes v. Ramirez–Palmer</u>, 485 F.3d 432, 440, 443 (9th Cir. 2007)

23   (upholding a life sentence for conviction for shoplifting of $114.40 worth of tools); <u>Taylor v.</u>

24   <u>Lewis</u>, 460 F.3d 1093, 1095, 1101 (9th Cir. 2006) (upholding a life sentence for possession of

25   0.036 grams of cocaine following long history of recidivism, including violent crimes); <u>Rios v.</u>

26   <u>Garcia</u>, 390 F.3d 1082, 1083, 1086 (9th Cir. 2004) (upholding a 25 years to life sentence for

27   stealing two watches worth $79.98 with prior robbery convictions).

28          Considering <u>Andrade</u> and Ninth Circuit precedent, this court is compelled to conclude that

1   petitioner's sentence was not grossly disproportionate to his crimes taking into account his

2   criminal history.  Petitioner was sentenced to 156 years to life for an assortment of drug and

3   weapons felonies and misdemeanors occurring on three days.  (ECF No. 31-2 at 144-62; ECF No.

4   31-11 at 7-8, 31 (convictions for possession of methamphetamine, possession of a hypodermic

5   needle, possession of methamphetamine and/or methadone while armed with a firearm,

6   maintaining a place for selling or using a controlled substance, unlawful possession of

7   ammunition, transportation of methamphetamine, possession of a deadly weapon, driving under

8   the influence of alcohol and drugs, being under the influence of methamphetamine, unauthorized

9   possession of a hypodermic needle, and driving with a suspended or revoked driver's license.)

10  The jury also found two out-on-bail allegations were true.  (ECF No. 31-11 at 8.)  This is not

11  materially different from the sentence the Supreme Court considered and affirmed in Andrade.  In

12  that case, the Supreme Court held that Andrade's sentence of two consecutive terms of 25 years

13  to life for stealing $150 worth in videotapes over two days was not grossly disproportionate or

14  cruel and unusual punishment under the Eighth Amendment.  Andrade, 538 U.S. at 70, 77.  As

15  another example, in Nunes, the Ninth Circuit upheld a sentence of 25 years to life for shoplifting

16  $114.40 worth of tools from Home Depot.  Nunes, 485 F.3d at 440, 443.  Here, petitioner was

17  sentenced to 25 years to life for each felony he committed.  (ECF No. 31-3 at 25-27.)  His

18  sentence is longer than petitioners' sentences in Andrade and Nunes only because he was

19  convicted of eight[4] felonies, not just one or two.

20          Recall that petitioner was sentenced as a third strike offender.  This is critical.  In this

21  context, the gravity of petitioner's offense must be weighted with "not only his current felon[ies],

22  but also his long history of felony recidivism."  Ewing, 538 U.S. at 29 ("Any other approach

23  would fail to accord proper deference to the policy judgments that find expression in the

24  legislature's choice of sanction."); see also Nunes, 485 F.3d at 439 (assessing petitioner's long,

25  prolific, and violent criminal career with his current sentence).  Petitioner's sentence is supported

26  by his lengthy criminal record.  In August 1989, he was convicted of voluntary manslaughter and

27

28  _____
    [4] The state court stayed his sentence on one of those counts.  Ragan, 2010 WL 4546696, at *10.

assault with a deadly weapon or force likely to produce great bodily injury.  (ECF No. 31-7 at 211-12.)  Although those violent offenses occurred when he was "much younger," the state court noted that the "circumstances of those crimes are disturbing."  (ECF No. 31-11 at 28.)  Petitioner "admitted beating an elderly man and shooting an African-American, significant because he continues to belong to a white supremacist gang."  His crimes are not "mere drug possession" as he remains armed and "appears ready to use his guns to intimidate, if not terrorize and shoot, other members of society.  Moreover, he has consistently violated his parole and served multiple prison terms."  (Id.)  As the state court summarized, petitioner "is not the benign drug abuser he would have us believe."  (Id. at 29.)   Based on his crimes and criminal record, this court concludes that petitioner's sentence was not grossly disproportionate or cruel and unusual punishment.  Without a colorable Eighth Amendment claim, this court finds that appellate counsel's failure to raise this argument when appealing the denial of petitioner's resentencing petition does not constitute ineffective assistance of counsel.

The state court's rejection of this argument was not contrary to, or an unreasonable application of, clearly established Supreme Court authority, or that such a finding was based on an unreasonable application of the facts.

> v.    Failure to Argue Cumulative Trial-Level Ineffective Assistance of Counsel
> (Claim 7)

Petitioner claims that appellate counsel was ineffective for failing to argue that trial counsel made several errors that amount to ineffective assistance of counsel.  (ECF No. 9 at 15, 120, 127-33; ECF No. 27 at 12-15.)  The alleged list of errors includes the following: failure to call other witnesses; failure to investigate and present DNA from firearm; failure to investigate co-defendant's guilty plea; failure to identify which drugs were found in the purses; and failure to argue that his belt buckle was a non-operable weapon.  (ECF No.  9at 15, 120, 127-33.)

Respondent asserts that the claim is procedurally barred and meritless.  (ECF No. 21 at 18-19.)

Petitioner first raised this claim in state habeas petitions before the trial court.  (ECF Nos. 31-25 & 31-26.)  In the last reasoned decision, the trial court rejected his claim:

29

1
2
3
4
5
6
7
8
9
10
11

The petitioner filed the current petition for writ of habeas corpus on August 14, 2017 in Placer County Superior Court case number WHC-1577. In it, the petitioner alleges ineffective assistance of counsel as to his appellate attorney for failing to adequately argue ineffective assistance of counsel as to his trial attorney. The petitioner claims that his trial attorney made numerous errors, the cumulative effect of which resulted in "a complete denial of due process" and a failure to "subject the prosecution's case to a meaningful adversarial testing." Specifically, the petitioner contends that his trial attorney should have argued that the prosecution had no authority to try him for crimes to which the co-defendant had already pleaded guilty, should have presented evidence that his DNA was not identified on the firearm, should have asked witness Jennifer Woods additional questions regarding the firearm, failed to investigate and question detectives about the co-defendant's guilty plea in the case, failed to identify to the jury which drugs were found in the co-defendant purse, failed to investigate and present evidence that the belt buckle was not a weapon, and should have called as witnesses Bambi Harris, Latosha Burnett, Jamie Snook, Bridgett Davis, and Rebecca Pinna.

…

A review of the petitioner's prior petitions filed with this court establishes that the ineffective assistance of counsel arguments set forth in the present petition regarding DNA evidence and failure to call witnesses were previously rejected by this court in Placer County Superior Court case numbers WHC-1074 and WHC-1080. Although the petition included a declaration from Jennifer Woods and a declaration from Bambi Harris which were not part of the previous petitions, the information set forth in the declarations is substantially the same information provided to the court in a summary format in the prior petitions. Moreover, the other allegations regarding ineffective assistance of counsel are vague, conclusory, and unsupported by legal authority. The court finds that the petitioner has failed to make a prima facie showing that his trial attorney's representation fell below an objective standard of reasonableness under prevailing professional norms or that a reasonable probability exists that these additional arguments would have changed the outcome of the case.

22

(ECF No. 31-26 at 4-6; see also ECF Nos. 31-27, 31-28, 31-35 & 31-36)

23

Although procedural issues are often addressed before the merits, they need not be.  A

24

federal court may deny a habeas petition on the merits notwithstanding the petitioner's failure to

25

exhaust remedies.  28 U.S.C. § 2254(b)(2).  As to procedural bar, the Supreme Court in Lambrix

26

v. Singletary, 520 U.S. 518 (1997) skipped over the procedural bar argument and proceeded to the

27

merits.  Id. at 525 ("Despite our puzzlement at the Court of Appeals' failure to resolve this case

28

on the basis of procedural bar, we hesitate to resolve it on that basis ourselves."); see also

1   Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002) (stating that courts may "reach the

2   merits of habeas petitions if they are, on their face and without regard to any facts that could be

3   developed below, clearly not meritorious despite an asserted procedural bar."). "Procedural bar

4   issues are not infrequently more complex than the merits issues" and "it may well make sense in

5   some instances to proceed to the merits if the result will be the same." Franklin, 290 F.3d at

6   1232; see, e.g., Dean v. Schriro, 371 F. App'x 751 (9th Cir. Mar. 17, 2010).  Because this claim

7   can be resolved on the merits, this court declines to decide whether a procedural bar precludes

8   petitioner from obtaining habeas relief.

9          After reviewing the trial record, this court concludes that the state court's rejection of his

10   claim was not objectively unreasonable for several reasons.  First, a mere list of conclusory

11   alleged errors is insufficient to demonstrate that this evidence could have reasonably impacted the

12   outcome of his trial.  Cursory and vague claims like these cannot support habeas relief.  See

13   Greenway v. Schriro, 653 F.3d 790, 804 (9th Cir. 2011).  Second, the trial record contradicts

14   some of petitioner's allegations.  For example, several individuals that petitioner now claims

15   should have testified at trial were fugitives of the law and could not be located.  (ECF No. 31-5 at

16   54-55.)  As another example, despite petitioner arguing otherwise, there was testimony at trial

17   identifying which drugs were found in co-defendant's purses in the vehicle.  (ECF No. 31-6 at

18   156-59, 163, 174.)  The operable weapon was not the belt buckle as petitioner claims, but the

19   brass knuckles attached to the belt.  (Id. at 163.)  Lastly, there was circumstantial evidence that

20   petitioner had access to the firearm because he lived in the house around the time police found the

21   gun in his shared bedroom.  (ECF No. 31-5 at 160, 199-200, 258, 284, 286, 290, 293; ECF No.

22   31-6 at 6, 8, 18, 21.)

23          To the extent petitioner asserts that these cumulative errors denied him due process, this

24   claim also fails.  (ECF No. 9 at 15.)  The Ninth Circuit has concluded that under clearly

25   established United States Supreme Court precedent the combined effect of multiple trial errors

26   may give rise to a due process violation if it renders a trial fundamentally unfair, even where each

27   error considered individually would not require reversal.  Parle v. Runnels, 505 F.3d 922, 927

28   (9th Cir. 2007) (citing Donnelly, 416 U.S. at 643, and Chambers v. Mississippi, 410 U.S. 284,

1  290 (1973)).  "[T]he fundamental question in determining whether the combined effect of trial

2  errors violated a defendant's due process rights is whether the errors rendered the criminal

3  defense 'far less persuasive,' and thereby had a 'substantial and injurious effect or influence' on

4  the jury's verdict."  Parle, 505 F.3d at 928 (internal citations omitted); see also Hein v. Sullivan,

5  601 F.3d 897, 916 (9th Cir. 2010) (same).

6        This court has addressed each of petitioner's claims and has concluded that no error of

7  constitutional magnitude occurred.  This court also concludes that the alleged errors, even when

8  considered together, did not render petitioner's defense "far less persuasive," nor did they have a

9  "substantial and injurious effect or influence on the jury's verdict."  Accordingly, petitioner is not

10  entitled to relief on his claim of cumulative error.  The state court's decision was not contrary to,

11  or an unreasonable application of, clearly established Supreme Court authority.

12        C.  Sixth Amendment Right to Jury Trial (Claim 8)

13        Lastly, petitioner argues that the state court's use of his 1989 prior convictions as strikes

14  to sentence him under the three strikes law violated his Sixth Amendment right to a jury trial.  He

15  claims that neither the underlying record from his 1989 convictions nor his admission of those

16  convictions during sentencing in this case are adequate to support the state court's determination

17  that they constitute strikes.  (ECF No. 27 at 8, 15-19; see also ECF No. 9 at 70; ECF 22-1 at 17

18  (arguing "that there is no on the record factual basis admitted to by the defendant, with respect to

19  the 1989 prior conviction, with respect to the Penal Code § 245(a)(1) prior conviction. And

20  Petitioner's plea of guilty, is not an admission of the elements of that charge.")  As support for his

21  claim, petitioner cites to Descamps v. United States, 570 U.S. 254 (2013) and People v. Gallardo,

22  4 Cal. 5th 120 (2017).

23        Respondent contends that the state court reasonably rejected petitioner's Sixth

24  Amendment claim because it was unsupported by the record.  (ECF No. 21 at 20.)

25        Petitioner raised this argument in state habeas petitions.  (ECF Nos. 22-1 to 22-7.)  In the

26  last reasoned decision, the trial court rejected his claim:

27            The petitioner filed the current petition for writ of habeas corpus on
             December 3, 2018 with Placer County Superior Court case number
28            WHC-1667.  An identical petition was filed on December 7, 2018

1   with case number WHC-1669. The petition asserts that the
2   sentencing court in his case illegally denied him the right to have a
    jury determine the truth of the strike allegations in his case pursuant
3   to the recent case of *People v. Gallardo* (2007) 4 Cal.5th 120. The
    court disagrees.

4   Prior to *Gallardo*, pursuant to the holding in *People v. McGee* (2006)
    38 Cal.4th 682, judges rather than the juries determined whether prior
5   convictions legally qualified as serious felonies.  In *Gallardo*, the
    Supreme Court overruled *McGee* and held that under the Sixth
6   Amendment juries must make such determinations.   In the
    petitioner's case, however, unlike *Gallardo*, the truth of the strike
7   allegations was determined by petitioner's own admissions, not by a
    judge.  The admission of a prior conviction encompasses not only the
8   fact that the prior conviction occurred, but also the allegations
    contained in the information regarding the nature of the conviction.
9   *People v. Ebner* (1966) 64 Cal.2nd 297.  Accordingly, the petition is
    summarily denied.

10

11  (ECF 22-3 at 3-4.)

12          The state court's rejection of his claim was not contrary to, or an unreasonable application

13  of, clearly established Supreme Court authority.  The two cases petitioner relies upon to support

14  his argument are inapposite.  In <u>People v. Gallardo</u>, the California Supreme Court held that

15  relevant facts that were neither found by a jury nor admitted by the defendant in a prior case

16  cannot serve as the basis for a defendant's increased sentence.  <u>Gallardo</u>, 4 Cal. 5th at 137.

17  <u>Gallardo</u>, however, is not applicable when a trial court does not engage in fact-finding but simply

18  enhances a petitioner's sentence based on his own admissions.  <u>See, e.g.</u>, <u>Banks v. Sherman</u>, No.

19  CV 18-9468-SP, 2019 WL 4749903, at *4 (C.D. Cal. Sept. 30, 2019).  After reviewing the record,

20  this court agrees with the state court that petitioner plainly admitted that both prior convictions

21  were strikes.  (ECF No. 31-7 at 211 (defense counsel stating "[w]e have seen the records for the

22  two prior alleged strikes, and we would be admitting that he has those two prior convictions from

23  Sacramento on or about August of 1989…[and] that those are strikes."); <u>see also</u> <u>id.</u> at 213; <u>id.</u> at

24  212 (prosecutor noting that both prior convictions constitute strikes under California law).)

25  Petitioner's attempt to undo the consequence of his admission fails and does not warrant habeas

26  relief.  Furthermore, in <u>Descamps</u>, the Supreme Court held that a federal sentencing court may

27  generally not examine documents from prior conviction proceedings to determine whether the

28  underlying facts of defendant's prior conviction fall under the federal Armed Career Criminal

1    Act, 18 U.S.C. § 924(e).  Descamps, 570 U.S. at 269, 277-78; see also Mathis v. United States,

2    136 S. Ct. 2243, 2252-54 (2016).  These cases do not apply here because petitioner was sentenced

3    as a state defendant and admitted the prior strikes on the record. See, e.g., Bernard v. Davis, No.

4    2:18-cv-07640-VBF-JC, 2021 WL 3709823, at *5 (C.D. Cal. June 1, 2021), report and

5    recommendation adopted, 2021 WL 4427233 (C.D. Cal. Sept. 23, 2021).

6           Without much context or support, petitioner asserts that he is "actually innocent of the

7    sentence he received" and that the state court's rejection of his claim is an unreasonable

8    determination of the facts.  (ECF No. 27 at 11-12.)  This court reviewed the record and finds that

9    petitioner raises this "actual innocence" argument for the first time in his traverse.  "A [t]raverse

10   is not the proper pleading to raise additional grounds for relief."  Cacoperdo v. Demosthenes, 37

11   F.3d 504, 407 (9th Cir. 1994).  The Ninth Circuit has held that a district court has discretion, but

12   is not required, to consider evidence and claims raised for the first time in the objection to the

13   magistrate judge's report.  United States v. Howell, 231 F.3d 615, (9th Cir. 2000); see also Brown

14   v. Roe, 279 F.3d 742, 745 (9th Cir. 2002).  In deciding whether to consider the newly offered

15   evidence, "the district court must actually exercise its discretion, rather than summarily accepting

16   or denying the motion."  Howell, 231 F.3d at 621-22.

17          Assuming the "actual innocence" argument was properly raised, this court considers the

18   claim on the merits.  A gateway claim of actual innocence would allow a federal habeas petitioner

19   to overcome a procedural bar to consideration of his claims on the merits.  McQuiggin v. Perkins,

20   569 U.S. 383, 386 (2013).  This exception is concerned with actual, as opposed to legal,

21   innocence.  Schlup v. Delo, 513 U.S. 298, 327-28 (1995); Calderon v. Thompson, 523 U.S. 538,

22   559 (1998).  But these claims are rare.  McQuiggin, 569 U.S. at 386.  "To be credible, such a

23   claim requires petitioner to support his allegations of constitutional error with new reliable

24   evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or

25   critical physical evidence—that was not presented at trial."  Schlup, 513 U.S. at 324.  "The

26   gateway should open only when a petition presents 'evidence of innocence so strong that a court

27   cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial

28   was free of nonharmless constitutional error.'"  McQuiggin, 569 U.S. at 401 (citing Schlup, 513

34

U.S. at 316).  This standard is an "extremely high hurdle."  <u>Stewart v. Cate</u>, 757 F.3d 929, 938 (9th Cir. 2014).

Here, petitioner's actual innocence claim fails for two reasons.  First, as the Ninth Circuit has explained, a petitioner's claim that he was "'actually innocent'" of a sentencing enhancement is "a purely legal claim that has nothing to do with factual innocence."  <u>Marrero v. Ives</u>, 682 F.3d 1190, 1193 (9th Cir. 2012).  It held that prisoners "generally cannot assert a cognizable claim of actual innocence of a noncapital sentencing enhancement."  <u>Id.</u>  Yet that is precisely what petitioner attempts to do here.  Second, the actual innocence exception is a remedy to the "injustice of incarcerating an innocent individual."  <u>McQuiggin</u>, 569 U.S. at 393.  A gateway innocence claim is foreclosed if the petitioner fails to produce any new evidence.  <u>See, e.g.</u>, <u>Pratt v. Filson</u>, 705 F. App'x 523, 525 (9th Cir. Aug. 4, 2017); <u>Chestang v. Sisto</u>, 522 F. App'x 389, 390-91 (9th Cir. June 11, 2013).  Petitioner does not argue that he is innocent of the crimes for which he was convicted, nor does he present any new evidence to support an actual innocence claim.  Because the state court's decision was not contrary to, or an unreasonable application of, clearly established Supreme Court authority, or that such a finding was based on an unreasonable application of the facts, this court recommends denying habeas relief on this claim as well.

VI.  <u>Conclusion</u>

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(3).  Any response to the objections shall be filed and served within fourteen days after

1    service of the objections.  The parties are advised that failure to file objections within the

2    specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951

3    F.2d 1153 (9th Cir. 1991).

4    Dated:  March 15, 2022

5

6                                                          KENDALL J. NEWMAN
                                                           UNITED STATES MAGISTRATE JUDGE
7

8    /TAA/ragan1924.157

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28